FIRST JUDICIAL DISTRICT COURT OF THE
COUNTY OF UNION.

KATHERINE DZIOBAK, PLAINTIFF, v. NICHOLAS
KOWITSKY, DEFENDANT.

Decided January 23, 1948.

For the plaintiff, *Nathan Reibel.*

For the defendant, *Weiner & Weiner.*

FELLER, D. C. J. This action is brought by the plaintiff, Katherine Dziobak, against the defendant, Nicholas Kowitsky, by reason of the alleged holding over by the defendant beyond the date upon which the defendant's tenancy was terminated—to wit., from June 15th, 1947, to on or about October 15th, 1947.

This suit is the result of a dispossess action instituted by the former landlord, the plaintiff herein, against this de-

fendant who was formerly the tenant of the premises at No. 340 Myrtle Street, Elizabeth, New Jersey. Said action was filed June 17th, 1947, in the First Judicial District Court of Union County. This action was filed before July 1st, 1947, when the new Housing and Rent Act passed by Congress went into effect. This law contained some substantial changes from the old law which expired—with some exceptions—on June 30th, 1947. This cause although filed on June 17th, 1947—before the new law went into effect—was not tried until July 11th, 1947, after the new law became effective. This court at that time denied a motion to dismiss the dispossess proceedings, holding that the terms of the old law were applicable. A judgment for possession was entered in favor of the landlord after a jury returned a verdict.

The tenant then applied to the New Jersey Supreme Court, for a writ of *certiorari* and also appealed to the United States District Court, and to the New Jersey Court of Chancery. Each time the decision—in effect—was in favor of the landlord. In each of these successive steps temporary orders were signed restraining the landlord from proceeding with the eviction of the tenants until the matter had been determined by each court appealed to. After these various proceedings had been completed, which was in the month of October, 1947, the tenant moved out.

Although the allegations of the plaintiff's state of demand are general, an agreed statement of facts indicates that the said plaintiff seeks to recover double the amount of rent as a penalty under the statute, by reason of the holding over of the tenant after the expiration of the term—namely, June 15th, 1947—as well as treble costs under the statute.

*R. S.* 2:58–6; *N. J. S. A.* 2:58–6, permits a suit in the nature of a penalty where a tenant in possession of real estate willfully holds over after the termination of the term and after demand made and notice in writing for delivering the possession thereof, for double the yearly value of the real estate so detained.

It is stipulated that the rental for the premises in question was $23 per month, the maximum rent allowed. Double this amount is $46 a month. The plaintiff therefore claims $46

per month for four months—from June 15th, 1947, to October 15th, 1947—making a total of $184 for rent. In addition the plaintiff claims $112.38 as treble the costs. The total claim is for $296.38.

Under the Emergency Price Control Act of 1942, 50 *U. S. C. A. Appendix,* §§ 901, *et seq.,* and the various rules and regulations promulgated thereunder, rent ceilings were established in the North Jersey area which includes the City of Elizabeth. These rent ceilings were continued by the provisions of section 204 (b) of the Housing and Rent Act of 1947, 50 *U. S. C. A. Appendix,* § 1894(b), which proves as follows:

"During the period beginning on the effective date of this title and ending on the date this title ceases to be in effect, no person shall demand, accept, or receive any rent for the use or occupancy of any controlled housing accommodations greater than the maximum rent established under the authority of the Emergency Price Control Act of 1942, as amended, and in effect with respect thereto on June 30, 1947."

Under this act, section 204 (c), the Housing Expediter is authorized to remove any or all maximum rents at any time, in any defense rental area, if in his judgment the need no longer exists. However, it is a matter of common knowledge that the said maximum rents have not been removed in the Elizabeth area.

Furthermore, section 206 (a) of the said Housing and Rent Act, 50 *U. S. C. A. Appendix,* § 1896 (a), provides:

"It shall be unlawful for any person to offer, solicit, demand, accept, or receive any rent for the use or occupancy of any controlled housing accommodations in excess of the maximum rent prescribed under section 204 (b)."

These two provisions continue rent ceilings and make it unlawful for any person to solicit, demand, accept, or receive any rent in excess of the maximum rent. They are evidently in conflict with *R. S.* 2:58–6; *N. J. S. A.* 2:58–6, which permits a landlord to collect double the rental value which in this case is double the rent.

Article 6, clause 2, of the Constitution of the United States provides as follows:

"This Constitution, and the Laws of the United States

which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the Contrary notwithstanding."

It must be noted under this section that the Laws of the United States passed in pursuance of the Constitution shall not only be the Supreme Law of the Land, but that the Judges in every State are bound thereby regardless of the Constitution or Laws of any State. This leads to the conclusion that whenever a conflict exists between the federal and state laws on matters concerning the freezing of rents to prevent inflation due to the acute shortage of housing accommodations, the federal laws must take precedence and be enforced to the exclusion of the state law so far as it is consistent with constitutional sanction. *Ricci* v. *Claire,* 21 *N. J. Mis. R.* 266; 33 *Atl. Rep.* (2d) 591. "When the Congress legislates in a field common to both the federal and state sovereignties, the federal act supersedes all inconsistent state legislation." *B. R. Waldron & Sons Co., Inc.,* v. *Milk Control Board,* 131 *N. J. L.* 267; 35 *Atl. Rep.* (2d) 27, 29.

Although the claim for double rent is, in effect, an attempt to create a penalty (as distinguished from rents) a landlord should not be permitted to receive pursuant to a state statute what the laws of Congress expressly or by implication intend to prohibit. These laws were intended, during the emergency created by the housing shortage, to prevent any exaction from the tenant of an amount above the rent as frozen—even though such exaction may be classified as a penalty. *Ricci* v. *Claire, supra.* Therefore to permit the landlord to recover the penalty that she claims would be a violation of section 204 (b) and section 206 (a) of the Housing and Rent Act of 1947.

Furthermore, the tenant in this case cannot be classified as a willful hold-over under *R. S.* 2:58–6; *N. J. S. A.* 2:58–6. "A belief of the tenant that he has a right to hold over must, in order to avoid the penalty of double yearly value, be an honest one, based on reasons sufficient to induce a jury to believe he had a right to remain in possession after written

demand therefor * * *." *Ancona Printing Co.* v. *Welsbach Co.,* 92 *N. J. L.* 204; 104 *Atl. Rep.* 132, 133. "A tenant cannot relieve himself by the mere statement that he believed he had a right to hold the premises. He must furnish reasons sufficient to induce a jury or court hearing the case to believe he had a right to remain in possession." *Ancona Printing Co.* v. *Welsbach Co., supra.*

The tenant believed that he had a right to remain in possession because the dispossess proceedings explained above were filed before July 1st, 1947, when the old law was in effect—even though they were tried after this date, which was the date that the Housing and Rent Act of 1947 went into effect. Under the old law the landlord had a cause of action, while under the new law she did not have a cause of action. This court decided that the old law applied to that particular cause. However, this court takes judicial notice of the fact that this decision, under the circumstances was a novel one and that apparently there was a lack of precedent for the same. Because of the novelty of the situation, and lack of precedent for said decision, the tenant was justified in believing that he had a right to remain in possession at least until such time as the law might possibly be construed and interpreted by some higher court. I am satisfied that the tenant had an honest belief in his right to remain in possession of the premises, while he attempted by legal process to have the courts sustain his right to remain. Under the peculiar circumstances of the case, a tenant should not be penalized because he has unsuccessfully applied to the courts for relief in a lawful manner. Therefore I am convinced that as a matter of fact the tenant had sufficient reasons to believe he had a right to possession.

Since it is the opinion of this court that the tenant is not a willful hold-over under the statute, he accordingly has not been guilty of an unlawful detention to justify the landlord in recovering treble costs.

The plaintiff herein is entitled to recover the costs connected with the dispossess action but these costs have already been taxed in that suit.

Consequently, a judgment is hereby entered for the defendant.